875 P.2d 137

**CONSOLIDATED WATER UTILITIES, LTD., a limited partnership, Appellant,**

v.

**ARIZONA CORPORATION COMMISSION, Appellee.**

**No. 1 CA–CC 92–0002.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 7, 1993.

Review Denied June 21, 1994.

Ellis, Baker & Porter, P.C. by Richard L. Sallquist and Teresa H. Foster, Phoenix, for appellant.

Arizona Corp. Com'n by Paul A. Bullis, Chief Counsel, Legal Div., Christopher C. Kempley, Asst. Chief Counsel, Phoenix, for appellee.

## OPINION

NOYES, Judge.

This is the first appeal decided pursuant to Ariz.Rev.Stat.Ann. (A.R.S.) section 40–254.-01, which provides for direct appeal to the court of appeals from Arizona Corporation Commission rate orders involving public service corporations. Appellant Consolidated Water Utilities (Consolidated) argues that Appellee Corporation Commission (the Commission) committed reversible error when it:

(1) fixed rates that are not "just and reasonable" as defined by the United States Supreme Court,

(2) denied recovery of income tax expense because Consolidated is a limited partnership, and

(3) set rates that will produce less revenue than authorized by the Commission's order.

Consolidated demands a trial *de novo* in the court of appeals. We hold that Consolidated is not entitled to a trial *de novo* on appeal. We affirm all aspects of the Commission's order except one: We reverse and remand regarding the rate schedule established for the Colorado River Division.

### I.

■ Consolidated owns and operates the two water companies at issue in this appeal—the Apache Junction Division serving Apache Junction, Arizona, and the Colorado River Division serving an area near Parker, Arizona. Although organized as a limited partnership, Consolidated is a "public service corporation" regulated by the Commission.[1] On April 30, 1990, Consolidated filed an application with the Commission seeking total rate increases of over thirty-five per cent in each division. Consolidated argued that the rate increases were needed to produce revenue sufficient to attract investors needed to finance pending construction projects.[2] The rates requested by Consolidated would produce revenue of about 1.25 times debt service coverage.[3]

The Commission held public hearings and received numerous customer letters regarding the application. On December 19, 1991, the Commission rendered Decision Number 57666, a thirty-three page opinion and order—with detailed findings and conclusions—that authorized rates and charges found by the Commission to be just and reasonable. Consolidated claims that the errors alleged in this appeal make the authorized rates and charges unjust, unreasonable, and confiscatory.

Consolidated filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. section 40–254.01.[4]

---

1. "Public service corporations" include: "All corporations other than municipal engaged in ... furnishing water for irrigation, fire protection, or other public purposes ..." Ariz. Const. art. 15, § 2. A public service corporation can be a sole proprietorship, a partnership, or a corporation. *See Van Dyke v. Geary*, 244 U.S. 39, 43–46, 37 S.Ct. 483, 484–86, 61 L.Ed. 973 (1917); *Williams v. Pipe Trades Indus. Program*, 100 Ariz. 14, 16, 409 P.2d 720, 722 (1966).

2. In 1989, Consolidated sought and received Commission authorization to issue revenue bonds totalling $3,295,000 to finance various construction and other projects. The authorization involved various conditions and stipulations not presently relevant. The Commission also stated: "IT IS FURTHER ORDERED that approval of the financing set forth hereinabove does not constitute or imply approval or disapproval by the Commission of any particular expenditure of the proceeds derived thereby for purposes of establishing just and reasonable rates."

3. "Debt service coverage," a financial indicator that quantifies a borrower's ability to pay its debts, is expressed as the ratio of funds available for repayment divided by funds required for repayment. If debt service coverage is less than 1.0, borrower is considered to have insufficient funds to pay its debts.

4. A.R.S. § 40–254.01(A), which became effective January 1, 1992, provides:

The attorney general on behalf of the state or any party to a proceeding before the commission who is dissatisfied with any order of the commission involving public service corporations and relating to rate making or rate design ... may file within thirty days after a rehearing is denied or granted, and not afterwards, a notice of appeal in the court of appeals to vacate, set aside, affirm in part, reverse in part or remand with instructions to the commission the order if the court of appeals determines upon a clear and satisfactory showing that the order is unlawful or unreasonable.

## II.

■ Consolidated claims entitlement to a trial *de novo* because "[a]lthough rate orders are now appealed directly to the appellate court pursuant to A.R.S. § 40–254.01, the decisions interpreting prior appeals to the Superior Court are still applicable." Consolidated ignores the fact that the *reason* rate orders are now appealed directly to the court of appeals is to *eliminate* the trial *de novo* feature of the previous appeals to superior court.

Before 1992, a party challenging a Commission rate decision was entitled by A.R.S. section 40–254 to a trial *de novo* on appeal to superior court.[5] *See Tucson Elec. Power Co. v. Arizona Corp. Comm'n*, 132 Ariz. 240, 243, 645 P.2d 231, 234 (1982). These appellate proceedings in superior court had features of both an appeal on the record and a trial *de novo*. *Id.*

Our supreme court has stated: "The difference between traditional judicial review of administrative decisions and review of Corporation Commission rate decisions by the Superior Court is that in rate cases, the Superior Court may take additional evidence to determine if the Commission's rate decision should be upheld." *Id.*

Experience proved this hybrid of record review and trial *de novo* to be unduly "time consuming and expensive in a ratemaking situation." *See Rate Decisions: Judicial Review of the Arizona Corporation Commission*, 19 ARIZ.L.REV. 488, 496 (1977). The legislature passed A.R.S. section 40–254.01 with the intention of eliminating *de novo* review of Commission rate decisions regarding public service corporations. *See* MINUTES OF HOUSE COMMITTEE ON GOVERNMENT OPERATIONS, March 13, 1991 at 2; MINUTES OF SENATE COMMITTEE ON JUDICIARY, April 16, 1991 at 10. The legislature regarded A.R.S. section 40–254.01 as "a bill that ... takes care of the problem of a large amount of time and expense to all parties that are engaged in what is now required to be trial *de novo* in superior court if any party of interest wants to appeal a rate case." MINUTES OF SENATE COMMITTEE ON JUDICIARY, April 16, 1991 at 10 (italics added). The bill was designed to "save an extreme amount of time and resources, and make a much more efficient proceedings [sic]." *Id.*

Appeals in rate cases, according to A.R.S. section 40–254.01(C), proceed pursuant to rules adopted by the supreme court which are to "conform, as nearly as possible, to the manner in which other appeals are undertaken." The supreme court's RULES OF PROCEDURE FOR DIRECT APPEALS FROM DECISION OF THE CORPORATION COMMISSION TO THE ARIZONA COURT OF APPEALS make no provision for trial *de novo* in the court of appeals. *See* A.R.S. Vol. 17B.

There is no authority for a trial *de novo* in the court of appeals, and there is every reason *not* to have a trial *de novo* in the court of appeals. Consolidated's request for trial *de novo* is denied.

## III.

■ The standard of review on appeal is codified in A.R.S. section 40–254.01(E), which states: "In all appeals that are taken pursuant to this section, the party adverse to the commission or seeking to vacate or set aside an order of the commission must make a clear and satisfactory showing that the order is unlawful or unreasonable."

"Clear and satisfactory" evidence means the same as "clear and convincing" evidence. *See Tucson Elec. Power Co.*, 132 Ariz. at 243, 645 P.2d at 234.

## A.

■ The Arizona Constitution has two separate provisions regarding rate-setting by the Commission. Section three of article fifteen provides: "The Corporation Commission shall ... prescribe just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected, by public service corporations within the State for service rendered therein ..."

5. A.R.S. § 40–254 remains in effect for all Commission decisions except those specified in A.R.S. § 40–254.01.

Section fourteen of article fifteen provides: "The Corporation Commission shall, to aid in the proper discharge of its duties, ascertain the fair value of the property within the State of every public service corporation doing business therein ..."

Consolidated concedes that the Commission established a proper "fair value" rate base pursuant to section fourteen,[6] but it argues that the Commission erred concerning section three by failing to use the United States Supreme Court's definition of "just and reasonable rates." Consolidated argues that the Commission should use the definition of "just and reasonable rates" articulated seventy years ago in Justice Brandeis' concurring opinion in *Missouri ex rel. Southwestern Bell Tel. Co. v. Public Serv. Comm'n,* 262 U.S. 276, 289, 43 S.Ct. 544, 547, 67 L.Ed. 981 (1923) and explained more fully in *Federal Power Comm'n v. Hope Natural Gas Co.,* 320 U.S. 591, 603, 64 S.Ct. 281, 288, 88 L.Ed. 333 (1944).

We agree with the Commission's argument that the Arizona Supreme Court settled this issue over thirty-five years ago in *Simms v. Round Valley Light & Power Co.,* 80 Ariz. 145, 151, 294 P.2d 378, 382 (1956):

It is clear, therefore, that under our constitution as interpreted by this court, the commission is required to find the fair value of the company's property and use such finding as a rate base for the purpose of calculating what are just and reasonable rates. The *Hope* case cannot be used by the commission. To do so would violate our constitution.

\* \* \* \* \* \*

The commission argues that fair value as used in the constitution may be considered as synonymous with prudent investment. This theory we cannot approve.... Irrespective of the merits, if any, of the prudent investment theory, because of our constitution the commission cannot use it as a guide in establishing a rate base.

Further, the *Simms* court stated: "The standard for establishing a rate base must be

the fair value of the property and not what the commission might believe was a fair rate of return on common equity." *Id.* at 155, 294 P.2d at 385; *accord Arizona Pub. Serv. Co.,* 113 Ariz. at 370, 555 P.2d at 328; *Arizona Corp. Comm'n v. Arizona Water Co.,* 85 Ariz. 198, 203, 335 P.2d 412, 415 (1959); *Scates v. Arizona Corp. Comm'n,* 118 Ariz. 531, 534, 578 P.2d 612, 615 (App.1978).

■ The Commission is obliged to follow *Simms,* and so are we. Consolidated's argument concerning the definition of "just and reasonable" rates is rejected. But to reject that argument is not to say that Consolidated can have no complaints about the rates set by the Commission. "[T]he company is entitled to a reasonable return upon the fair value of its properties at the time the rate is fixed." *Simms,* 80 Ariz. at 153, 294 P.2d at 383.

[T]he rates established by the Commission should meet the overall operating costs of the utility and produce a reasonable rate of return. It is equally clear that the rates cannot be considered just and reasonable if they fail to produce a reasonable rate of return or if they produce revenue which exceeds a reasonable rate of return.

*Scates,* 118 Ariz. at 534, 578 P.2d at 615.

Consolidated argues that the rate of return established by the Commission will not allow it to attract the capital needed to finance new construction. Consolidated therefore asked the Commission to authorize rates that would allow it to attract investors for about $3,295,-000 in bonds it hoped to sell for anticipated construction work in progress (CWIP). Anticipated CWIP is a matter that the Commission could have considered in establishing the fair value rate base, in the exercise of its discretion. *See Arizona Pub. Serv. Co.,* 113 Ariz. at 371, 555 P.2d at 329. The Commission considered Consolidated's argument and evidence, it found that this anticipated CWIP was not a proper expense to pass on to ratepayers, and it disallowed the proposed expense in calculating the rate base. Part of the Commission's discussion on this issue is

---

**6.** The fair value rate base is the fair value of the company's properties within the state at the time the rate is fixed. *See Arizona Corp. Comm'n v. Arizona Pub. Serv. Co.,* 113 Ariz. 368, 370, 555 P.2d 326, 328 (1976).

quoted below to give some sense of its concerns about this anticipated CWIP:

> At the time of the hearing, the Company had not received approval from the Arizona Department of Commerce for issuing the [Pinal County Industrial Development Authority] bonds. In fact, it was not clear if the Company would ever receive such approval. Further, the Company was not planning to begin construction on the [anticipated CWIP] facilities until the funds were in place from the bond issuances.... The [prior] Commission Order approved repayment terms of fifteen years for the taxable portion of the [bond] debt while the Company was now proposing repayment terms of six years during this proceeding.

> We concur with Staff and [the Residential Utility Consumer Office] that the anticipated CWIP should be disallowed from rate base. The amount of actual construction to be undertaken is not known and measurable and the anticipation of construction is currently not used and useful. There was no evidence that the anticipated CWIP had in any way benefitted ratepayers. In fact, it is not clear if it will ever be used to benefit ratepayers.

Decision No. 57666 at page 5.

Consolidated has not convincingly shown that the Commission erred in determining "just and reasonable" rates.

### B.

Consolidated argues that the Commission erred by disallowing "at least one major expense item," the recovery of state and federal income tax expenses of its partners. Consolidated requested that "it be allowed to recover income taxes as part of its cost of service at the composite state and federal rate applicable to married couples-filing jointly, which is the lowest rate and substantially lower than the applicable corporate rate."

Consolidated relies on *Moyston v. New Mexico Pub. Serv. Comm'n*, 76 N.M. 146, 412 P.2d 840 (1966) and *Suburban Util. Corp. v. Public Util. Comm'n*, 652 S.W.2d 358 (Tex. 1983) to support its argument. In *Moyston*,

the New Mexico Supreme Court allowed a sole proprietorship to recover income tax expenses, and in *Suburban*, the Texas Supreme Court allowed a Subchapter S corporation to recover income tax expenses. Although these cases support Consolidated's argument, we must evaluate them in light of our Commission's discretionary authority.

The Arizona Constitution, in article fifteen, created the Arizona Corporation Commission and endowed it with expansive rights in setting rates for public service corporations. Arizona's Corporation Commission "is unique in that no other state has given its commission, by whatever name called, so extensive power and jurisdiction." *State v. Tucson Gas, Elec. Light and Power Co.*, 15 Ariz. 294, 300, 138 P. 781, 783 (1914); *accord Arizona Corp. Comm'n v. State ex rel. Woods*, 171 Ariz. 286, 291, 830 P.2d 807, 812 (1992); *Arizona Corp. Comm'n v. Superior Ct.*, 107 Ariz. 24, 26, 480 P.2d 988, 990 (1971); *see generally* Deborah Scott Engelby, Comment, *The Corporation Commission: Preserving Its Independence*, 20 ARIZ.ST.L.J. 241, 256 n. 126 (1988) (eight states, including Arizona, have constitutional provisions creating a corporation commission; however, Arizona's constitutional authority is arguably more expansive than the others).

The Commission has the "full power" to "prescribe just and reasonable classifications to be used and just and reasonable rates and charges to be made ... by public service corporations within the State ..." ARIZ. CONST. art. XV, § 3. Many cases have recognized the Commission's broad power to set rates for public service companies. *See Tucson Elec. Power Co.*, 132 Ariz. at 242, 645 P.2d at 233; *Arizona Pub. Serv. Co.*, 113 Ariz. at 370–71, 555 P.2d at 328–29; *Tucson Gas*, 15 Ariz. at 299, 138 P. at 783. In the present case, we recognize an equally broad power to "prescribe just and reasonable classifications to be used" in setting rates under article fifteen, section three. *See also State ex rel. Corbin v. Arizona Corp. Comm'n*, 174 Ariz. 216, 218, 848 P.2d 301, 303 (App.1992) ("The commission has the *exclusive* power to exercise the duties given it in art. 15, § 3.").

The Commission is constitutionally endowed with a very broad power to pre-

scribe classifications and to establish categories to consider in setting rates. *See generally Arizona Corp. Comm'n v. State ex rel. Woods,* 171 Ariz. at 294, 830 P.2d at 815 ("[W]e must give deference to the Commission's determination of what regulation is reasonably necessary for effective ratemaking."). The category of income tax expense is one classification that the Commission can consider in establishing rates.

In the present case, the Commission explained its disallowance of Consolidated's claim for income tax expenses as follows:

> The Company [Consolidated] is organized as a partnership and as such does not pay income tax. The Company made a pro forma adjustment to income taxes as if it were organized as a corporation and required to pay taxes. According to the Company, it is only fair to allow income taxes since the partners are liable for taxes.... As we discussed in the previous rate case, Applicant will pay no taxes on the income which it generates from the rates authorized hereinafter. Accordingly, we shall not allow any income tax expense to be charged to its ratepayers.

Decision No. 57666 at 15.

■ Historically, corporations and partnerships have been treated very differently under the income tax laws. A corporation is subject to dual taxation—the corporation is taxed on the corporate level, and the shareholders are then individually taxed on the distributions from the corporation. *See State Tax Comm'n v. Television Servs., Inc.,* 108 Ariz. 236, 239, 495 P.2d 466, 469 (1972). A partnership, on the other hand, is not taxed as an entity; rather, the profits and losses flow through to the partners who pay tax on their partnership income as part of their individual taxable income for the year. *See Arizona Tractor Co. v. Arizona State Tax Comm'n,* 115 Ariz. 602, 604–05, 566 P.2d 1348, 1350–51 (App.1977). The Commission has the power to consider these differences and to treat each entity accordingly.

■ Recognizing that two of the other forty-nine states have allowed income tax expenses incurred by utility companies operating as Subchapter S corporations or sole proprietorships, we also recognize that, in Arizona, the decision to allow or disallow that tax expense is to be made by the Commission, not the courts. *See also Tucson Gas,* 15 Ariz. at 306, 138 P. at 786 (the Commission has exclusive power over rate cases, and this "exclusive field may not be invaded by either the courts, the legislative or executive.").

Consolidated has not convincingly shown that the Commission erred in disallowing recovery of partnership income tax expenses.

## C.

■ With regard to the Colorado River Division (CRD), the Commission found test year operating income of a negative $623; it found a just and reasonable rate of return on the fair value rate base to be 8.9 per cent; it found that "Operating income of $105,105 is necessary to yield a 8.9 percent rate of return on the Colorado River Division's [fair value rate base]."

Consolidated argues that the Commission made a computational error when designing the rate schedules for the CRD. Consolidated calculates this error by multiplying the test year data on water bills and usage by the rate schedule authorized by the Commission's decision. According to these calculations—which the Commission does not dispute—the rate schedule is projected to produce about $30,000 less revenue for the CRD than the $105,000 in income found "necessary" by the Commission for that Division, a shortfall of over twenty-eight per cent. Consolidated asks us to remand with directions that the Commission set rates for the CRD that are designed to produce the revenue—and income—found necessary by the Commission.

The Commission argues that the authorized revenue level is not a guaranteed revenue for a given year and that Consolidated's projected shortfall is immaterial. We agree that authorized revenue is not guaranteed; Consolidated does not argue otherwise. Many factors such as consumer demand and management business decisions contribute to actual revenue produced. We do not agree,

however, that the projected revenue shortfall is immaterial.

The Commission takes the $30,000 projected revenue shortfall and divides it by $1,914,-000, the test year revenues for the CRD and the Apache Junction Division (AJD) combined. The Commission then argues that the projected shortfall is immaterial because it is less than two percent. That argument is unfair.

The rates for the CRD were determined with reference only to data from that Division; it is not fair to use data from the AJD to minimize a projected revenue shortfall in the CRD. More importantly, the projected revenue shortfall should be measured in comparison to what the Commission found to be "necessary" income. A shortfall in revenue will mean a corresponding shortfall in income. As pointed out by Consolidated: "This shortfall goes directly to the Company's bottom line."

There must be significant error in the rate schedules for the CRD; the rates are clearly unreasonable in light of the other findings by the Commission regarding this Division. A rate schedule designed to produce twenty-eight percent less than a fair rate of return is not "just and reasonable." Consolidated has met its burden to clearly show that the Decision is unreasonable and unlawful in regards to the rate schedule authorized for the CRD.

### D.

Consolidated requests temporary relief and approval of its proposed rate schedule pending review by the Commission. The request is moot regarding all but the issue on which we remand, and on that issue we accept the Commission's avowal that it can and will "act expeditiously to remedy any defects found by the court."

### IV.

Decision number 57666 of the Arizona Corporation Commission is affirmed, except as follows:

1. The rate schedule for the Colorado River Division is reversed.

2. The case is remanded to the Commission with directions to expeditiously establish a rate schedule designed to produce the authorized rate of return for the Colorado River Division, and for other proper relief as deemed necessary by the Commission.

GARBARINO, P.J., and WEISBERG, J., concur.