864 P.2d 1081

**TONTO CREEK ESTATES HOME-OWNERS ASSOCIATION, an Arizona nonprofit corporation, Plaintiff–Appellant,**

v.

**ARIZONA CORPORATION COMMISSION, an agency of the State of Arizona, Defendant–Appellee.**

No. 1 CA–CV 91–0146.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 16, 1993.

**52**

Ryley, Carlock & Applewhite, P.A. by George Read Carlock and Norman D. James, Phoenix, for plaintiff-appellant.

Arizona Corp. Com'n Legal Div. by Deborah Scott Engelby and Paul A. Bullis, Phoenix, for defendant-appellee.

## OPINION

GRANT, Presiding Judge.

Tonto Creek Estates Homeowners Association (the "Homeowners Association") appeals from a decision of the superior court affirming an order of the Arizona Corporation Commission (the "Commission") ordering it to assume a certificate of convenience and necessity issued to other persons and ordering it to provide the same level of service to all customers in its entire service area. We are called upon to answer two questions: (1) Did the Commission act unlawfully in ordering the transfer of the certificate of convenience and necessity to the Homeowners Association, and (2) did the Commission act unlawfully in ordering the Homeowners Association to furnish water service to a subdivision that lies outside the boundaries of the original certificate of convenience and necessity? We hold that the Commission was without jurisdiction to order the transfer or modification of the certificate, but that the Commission may order the Homeowners Association to charge approved rates and provide nondiscriminatory services.

## I. FACTS AND PROCEDURAL HISTORY

A. *Tonto Creek Estates, the Certificate of Necessity and Convenience, and the Water System*

Tonto Creek Estates is a 90–lot subdivision in Gila County. The Tonto Creek Estates partnership, composed of 22 couples, was formed in the late 1950s. The subdivision plat was recorded in 1959. John Kerr ("Kerr") had bought the whole parcel and conveyed it to the partnership. The partners desired water for the land and appointed Larry M. Hamman ("Hamman"), Fred S. Hickernell ("Hickernell"), and R. Lee Foster ("Foster") as trustees to obtain the necessary approvals. (We will sometimes refer to Hamman, Hickernell and Foster collectively as the "original certificate holders.") Each owned property within that subdivision.

In February of 1959, Hickernell, Hamman, and Foster applied for a certificate of convenience and necessity from the Commission to provide water service for an area of Gila County. They stated they were "doing business under the name and style of TONTO CREEK ESTATES WATER SYSTEM." In June of that year, in Decision No. 31597, the Commission granted the application and awarded a certificate of convenience and necessity to "Fred S. Hickernell, Larry M. Hamman and R. Lee Foster, dba Tonto

Creek Estates Water System." The certificated area was described as:

> Tonto Creek Estates, which is located in Sections 4 and 9, Township 11 North, Range 12 East, Gila and Salt River Base and Meridian, all in Gila County, Arizona.

As of the commencement of this action, the Commission has never amended the certificate it issued to Hamman, Hickernell and Foster. The Commission has never authorized the transfer of the certificate to any other person or entity.[1] The Commission has not approved the company to limit the use of water to domestic use only, approved any moratorium or water restriction, nor authorized any specific assessments or individual contracts for service between the company and any person.

The Tonto Creek Estates partnership constructed and owned the water distribution system. The water system provides two types of services: water for interior domestic purposes and water for exterior, irrigation purposes. Interior water comes from a well which the partnership dug in approximately 1965. Exterior water is diverted from nearby Dick Williams Creek by a dam which was constructed by the Tonto Creek Estates homeowners with their own labor. The Homeowners Association rebuilt part of that system after a flood. The water from Dick Williams Creek does not service Tonto Rim Ranch.[2]

B. *Tonto Rim Ranch and the Water System*

Tonto Rim Ranch is a subdivision abutting Tonto Creek Estates on the south. It was acquired and subdivided in 1947 by Tonto Rim Ranch Partnership, a partnership composed of Kerr, Newell Stewart, Sam Wallace, and the Hammans. The partners divided the lots among themselves.

When Hamman, Hickernell and Foster applied for the certificate, Hamman and his parents owned several lots in Tonto Rim Ranch. At that time, Hamman's and his parents' houses in Tonto Rim Ranch utilized Tonto Creek for their source of water. Hickernell was acting on behalf of his father-in-law, Kerr. Kerr owned Rancho Tonto, a portion of Tonto Creek Estates, and several lots in Tonto Rim Ranch. Other members of Kerr's family owned lots in Tonto Creek Estates.

In 1964, the Hamman family installed a water line from the Tonto Creek Estates well-water system to their lots on the west side of the Tonto Rim Ranch. Larry Hamman's father handled the installation of the line and the Tonto Creek Estates partnership purchased at least part of the materials. The February 23, 1965 minutes of the Tonto Creek Estates Partnership indicate that $500 was borrowed "for extension of the existing water line to supply the L.M. Hammans." When the Hammans received this water, the Tonto Creek Estates Partnership did not inform Larry Hamman of any restrictions on its use. Although he has used this water to water his flower garden and a few trees, nobody ever threatened to cut off his supply because of that use.

In the 1960s and early 1970s, Kerr ran the water system and was known as the person to contact if one wanted water service. During the 1970s, John and Opal Kerr paid for the installation of lines which brought Tonto Creek Estates well water to their lots in eastern Tonto Rim Ranch. They intended to sell the lots and brought the water in to enhance their value. Lester Hayt ("Hayt"), who bought a Tonto Rim Ranch lot from

---

1. However, in 1974 the water system's annual report to the Commission was filed by "John S. Kerr, dba Tonto Creek Estates Water Systems." In 1986, the annual report was filed by the Tonto Creek Estates Homeowners Association, dba Tonto Creek Estates Water Systems.

2. Either the Homeowners Association or the water system has a certificate of water right for water from Dick Williams Creek in the amount of 1,500,000 gallons per year, but this is for outside and wildlife use. The Homeowners Association has filed a statement of claim in the Gila River adjudication for creek water used in the Tonto Creek Estates subdivision. There is no filing by the Homeowners Association with respect to water used outside the Tonto Creek Estates subdivision, although individual owners in the Tonto Rim Ranch may have filed claims.

Kerr, testified that Kerr brought water to his lots "in order that he could offer these lots for sale by having water, power and roads available." Before buying a lot from Kerr, Hayt had discussed the water situation with him. Kerr informed Hayt that the only requirements to obtain service in Tonto Rim Ranch were to make a request and pay to extend the lines. Hayt ended up not having to pay for the extension because Kerr later extended the line on his own and also paid for an additional 10,000–gallon storage tank and other improvements to the system. Hayt was not informed of any limitation on the use of his water.

Residents of both Tonto Creek Estates and Tonto Rim Ranch have paid for upkeep of the system. In November 1985, the Homeowners Association assessed a $50–per–lot assessment to replace the pressure tank. On the assumption that he would eventually obtain service for each of his lots, Hayt paid $200, although he was receiving water service to only one of his four lots in Tonto Rim Ranch subdivision.

## C. Operation of the Water System by the Homeowners Association

By 1973, most of the Tonto Creek Estates lots had been sold and the partnership was dissolved. The Tonto Creek Estates Homeowners Association, a non-profit corporation formed in 1973, has operated, maintained and exercised full control over the water system since about 1975. To be a member of the Homeowners Association one must own property in Tonto Creek Estates. Being an owner automatically entitles one to water service, both for domestic use and irrigation service, but one does not have to be a member of the Homeowners Association to receive water service.[3] The board of directors of the Homeowners Association decides whether to furnish water when a person in Tonto Rim Ranch requests water service.

After the Homeowners Association assumed the operation of the water system, it established a policy of being reluctant to provide water service outside of Tonto Creek Estates. This policy has continued to the present.[4] In accordance with this policy, the board prepared a form letter as a response to people outside the certificated area who might request service. The letter told them that if the Homeowners Association decided to furnish water, it would be under the conditions of interior domestic uses only, and terminable by Tonto Creek Estates at any time.

The Homeowners Association now provides water service to eleven lots in Tonto Rim Ranch subdivision. The water lines in Tonto Rim Ranch subdivision, operated by the Homeowners Association, are situated such that they may provide a water service connection to each lot in the subdivision except one, Lot 30.

There are several owners of lots in Tonto Rim Ranch who have applied for service from Tonto Creek Estates Water System, but because these people have not built homes on their lots, they cannot make any interior domestic use of water. Consequently, they cannot meet the requirements imposed by the Homeowners Association and are ineligible for service under the Homeowners Association's policy.

One of the persons who was turned down for service, Matthew Palenica, the owner of Lot 30, filed a complaint with the Commission in August 1987, stating that the water system had denied him service. On January 8, 1988, the Commission issued a complaint and order to show cause, alleging that the Tonto Creek Estates Water System had failed to provide water to a property owner within the company's service area. The water system was ordered to show cause "why

---

3. The current bill is $100 per year for domestic water and $30 for irrigation water.

4. The board's current president testified to the following reasons underlying the policy: neither the well's capacity, nor the capacity the system can serve, is known; the water level in the aquifer has gone down twice; no hydrological studies have been done; there are no wells within the Tonto Creek Estates lots; and it is unknown whether the water from Dick Williams Creek can be purified to make it potable.

the Arizona Corporation Commission should not require Tonto Creek to comply with Commission statutes and rules, reimburse customers for unlawful charges, make reparation for discriminatory charges, and further show cause ... why the Commission should not find Tonto Creek in contempt and fine it...."

The original certificate holders did not answer, but the Homeowners Association did. It admitted it operated the water system and was subject to the Commission's jurisdiction, at least as to its rights and obligations under the certificate of convenience and necessity. It denied it was subject to the Commission's jurisdiction with respect to any requirement that service be extended beyond the area described in the certificate of convenience and necessity. It further admitted that it had provided water service to lots in Tonto Rim Ranch.

The Commission conducted a hearing on June 16, 1988. The two surviving original certificate holders, Hamman and Hickernell, were present at the hearing. Foster had died. Hamman testified extensively.

On October 14, 1988, the Commission issued its Decision No. 56179, which is the subject of this appeal. The Commission ordered the Homeowners Association to assume the certificate of convenience and necessity issued to Hamman, Hickernell, and Foster, and provide nondiscriminatory water service to residents of Tonto Rim Ranch. After its application for rehearing was denied, the Homeowners Association filed this action for review in the superior court. On cross-motions, the superior court granted summary judgment to the Commission. The Homeowners Association filed a timely notice of appeal.

## II. DISCUSSION

In reviewing a Corporation Commission decision the superior court may disturb the Commission's decision only if the party adverse to the Commission carries the burden of showing by clear and satisfactory evidence that the action of the Commission is unreasonable or unlawful. *Tucson Elec. Power Co. v. Arizona Corp. Comm'n*, 132 Ariz. 240, 243,

645 P.2d 231, 234 (1982); Ariz.Rev.Stat.Ann. ("A.R.S.") § 40–254(E). "Clear and satisfactory" evidence is the same as "clear and convincing" evidence. *Id.*

■ An appellate court reviews the decision of the superior court and not the decision of the Commission. *Sun City Water Co. v. Arizona Corp. Comm'n*, 113 Ariz. 464, 465, 556 P.2d 1126, 1127 (1976). When reviewing a summary judgment on appeal, we review the facts and reasonable inferences in a light most favorable to the party against whom the trial court granted summary judgment. *Woerth v. City of Flagstaff*, 167 Ariz. 412, 416, 808 P.2d 297, 301 (App.1990). If no genuine issues of material disputed facts remain and the moving party is entitled to judgment as a matter of law, we must affirm the decision of the trial court. *Id.*

### A. *Certificate of Convenience and Necessity*

■ The Commission asserts that it had jurisdiction to transfer the certificate of convenience and necessity to the Homeowners Association because the Arizona Constitution and A.R.S. title 40 vest plenary power in the Commission to regulate public service corporations. This has been rejected by our supreme court as a misstatement of the law. *Williams v. Pipe Trades Indus. Program of Ariz.*, 100 Ariz. 14, 19, 409 P.2d 720, 723 (1966); *Corporation Comm'n v. Pacific Greyhound Lines*, 54 Ariz. 159, 176–77, 94 P.2d 443, 450 (1939). The Corporation Commission's powers are limited and do not exceed those to be derived from a strict construction of the Constitution and implementing statutes. *Williams*, 100 Ariz. at 17, 409 P.2d at 722; *Walker v. DeConcini*, 86 Ariz. 143, 150, 341 P.2d 933, 938 (1959). The supreme court has addressed this issue on several occasions.

[U]nder the direct language of the Constitution and the police power inherent in the legislative authority, the paramount power to make all rules and regulations governing public service corporations not specifically and expressly given to the commis-

sion by some provision of the Constitution, rests in the legislature, and it may, therefore, either exercise such powers directly or delegate them to the commission upon such terms and limitations as it thinks proper.

*Greyhound*, 54 Ariz. at 176–77, 94 P.2d at 450.

The Corporation Commission, by Art. 15, § 3 of the Arizona Constitution, is authorized to prescribe "just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected, by public service corporations within the State ..." and it may "make reasonable rules, regulations, and orders, by which such corporations shall by governed in the transaction of business...." We have repeatedly held that the power to make reasonable rules and regulations and orders by which a corporation shall be governed refers to the power to prescribe just and reasonable classifications and just and reasonable rates and charges.

The Constitution does not authorize the Commission to issue public certificates of convenience and necessity....

*Williams*, 100 Ariz. at 17, 409 P.2d at 722 (citations omitted).

The Constitution permits the legislature to "enlarge the powers and extend the duties of the Corporation Commission...." Ariz. Const. art. XV, § 6. In the area of certificates of convenience and necessity the legislature has, by statute, authorized the Commission to issue such certificates:

A. A public service corporation, other than a railroad, shall not begin construction of a street railroad, a line, plant, service or system, or any extension thereof, without first having obtained from the commission a certificate of public convenience and necessity.

. . . .

C. No such corporation shall exercise any right or privilege under any franchise or permit without first having obtained from

the commission a certificate of public convenience and necessity.

A.R.S. § 40–281.

■ Issuing certificates of convenience and necessity is far from a plenary power of the Commission. To the contrary, it is a legislative power delegated to the Commission subject to restrictions as the legislature deems appropriate. *Greyhound*, 54 Ariz. at 177, 94 P.2d at 450. Reviewing title 40, we can find no statute that specifically grants the Commission power to order the transfer of a certificate of convenience and necessity from one corporation to another. If the Commission has this power it must be derived from section 40–252 which generally allows the Commission to rescind, alter or amend an earlier decision as follows:

The commission may at any time, upon notice to the corporation affected, and after opportunity to be heard as upon complaint, rescind, alter or amend any order or decision made by it. When the order making such rescission, alteration or amendment is served upon the corporation affected, it is effective as an original order or decision. In all collateral actions or proceedings, the orders and decisions of the commission which have become final shall be conclusive.

A.R.S. § 40–252.

1. Statutory Restrictions

■ Article XV, Section 6 of the Arizona Constitution specifically permits the legislature to "prescribe rules and regulations to govern proceedings instituted by and before" the Corporation Commission. The legislature has, in A.R.S. section 40–252, prescribed such rules and regulations with the words "upon notice to the corporation affected, and after opportunity to be heard as upon a complaint...." In other words, before the Commission may change an order or decision made by it, the Commission is required by statute to provide the affected corporation with notice and an opportunity to be heard.

■ The Commission is required to comply with general rules and regulations prescribing methods of procedure. *Tucson*

*Warehouse & Transfer Co. v. Al's Transfer,* 77 Ariz. 323, 327, 271 P.2d 477, 479–80 (1954). A decision rendered by the Commission which goes beyond its powers as prescribed by the constitution and statutes is subject to attack for lack of jurisdiction. *Id.* at 325, 271 P.2d at 478.

According to the Commission's finding of fact, the certificate of convenience and necessity at issue in this case was granted by order of the Commission in Decision No. 31597 (June 3, 1959) to Hickernell, Hamman and Foster and has never been transferred. The Commission's order in Decision No. 56179 (October 14, 1988) states in part:

> IT IS THEREFORE ORDERED that the certificate of convenience and necessity issued by the Commission in Decision No. 31597 (June 3, 1959) be, and hereby is, transferred from Messrs. Hickernell, Hamman and Foster to the Tonto Creek Estates Homeowners Association.

This decision clearly rescinds, alters or amends Decision No. 31597. Thus, the rules governing Corporation Commission proceedings as prescribed in A.R.S. section 40–252 are applicable and binding on the Commission.

█ Section 40–252 requires that notice and an opportunity to be heard be provided to the "corporation" affected. The constitutional definition of public service corporations includes individuals. *Williams,* 100 Ariz. at 16, 409 P.2d at 721. The Commission found as a conclusion of law that Hickernell, Hamman and Foster constitute a public service corporation within the meaning of the Arizona Constitution and related statutes. Therefore they are affected by an order that purports to transfer a certificate of convenience and necessity held by them to another corporation. Thus, in accordance with A.R.S. section 40–252 the Commission was required to have provided Hickernell, Hamman and Foster with notice and an opportunity to be heard prior to issuing Decision No. 56179. If the Commission failed to do so, the Commission's order purporting to alter its earlier decision to issue the certificate to Messrs.

Hickernell, Hamman and Foster is void for lack of jurisdiction.

2. Actual Notice

█ The Commission argues that the original certificate holders obtained actual notice of the hearing presumably satisfying the requirements for actual notice as prescribed in A.R.S. section 40–246(C):

> C. Upon filing the complaint, the commission shall set the time when and a place where a hearing will be had upon it and shall serve notice thereof, with a copy of the complaint, upon the party complained of not less than ten days before the time set for the hearing, unless the commission finds that public necessity requires that the hearing be held at an earlier date. Service may be made ... in any manner giving actual notice, and no irregularity in the service is an excuse or defense.

The only evidence in the record supporting this contention is a statement in the opening remarks by counsel for the Homeowners Association that Hickernell and Hamman are present at the hearing and that Dr. Foster is deceased, and the fact that Mr. Hamman gave extensive testimony at the hearing.

This hardly supports a contention of actual notice. In spite of their presence at the hearing, there is no evidence that Hickernell or Hamman ever viewed the complaint or knew there were charges against them contained within it.

Any knowledge gained by Hickernell and Hamman while seated in the hearing room listening to the proceedings as they occurred would not be considered actual notice. Subsection C of section 40–246 requires at least ten days notice "unless the commission finds that public necessity requires that the hearing be held at an earlier date." The Commission made no such finding of public necessity requiring an earlier hearing. Absent the most extenuating circumstances, obtaining actual notice of charges while seated in the very hearing convened to decide the issues would not afford the parties a meaningful opportunity to be heard.

Hamman being called as a witness also does not demonstrate actual notice. Being called as a witness at a hearing without anything more could perhaps be construed as notice of a complaint against someone but does not constitute actual notice of a complaint against the witness.

As for Dr. Foster, the record contains no evidence that the Commission made any attempt to serve notice on this party or his estate or his personal representative, or that any such actual notice was obtained.

Therefore, we hold that since Messrs. Hickernell, Hamman, and Foster, as the individual holders of the certificate and the corporation affected, were not afforded notice and an opportunity to be heard in accordance with A.R.S. section 40–252, the Commission's order purporting to transfer or modify the certificate is void for lack of jurisdiction.

### B. The Homeowners Association's Operation of the Water System

■ Portions of the Commission's order relate to the Homeowners Association's obligations to provide nondiscriminatory services and charges. We affirm the superior court's grant of summary judgment in favor of the Commission on these portions of the order.

### 1. Commission's Power Over Classifications and Rates

The Commission asserts that regardless of whether the Homeowners Association is the holder of a certificate of convenience and necessity or whether the certificate in this case includes the Tonto Rim Ranch subdivision, the Homeowners Association may still be obligated to provide nondiscriminatory service to Tonto Creek Estates and the Tonto Rim Ranch subdivisions as part of its service area. We agree.

■ Article XV, Section 3 of the Arizona Constitution grants the Corporation Commission power to "prescribe just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected, by public service corporations within the State for service rendered there-

in . . . ." This constitutional power over rates and classifications has been described as both exclusive and plenary. *Tucson Elec. Power Co.,* 132 Ariz. at 242, 645 P.2d at 233. It is not dependent upon the public service corporation being subject to a certificate of convenience and necessity. Certificates of convenience and necessity are creatures of statute and nowhere mentioned in the Constitution. The definition of a public service corporation contained in Article XV, Section 2 makes no differentiation on the basis of whether one holds a certificate of convenience and necessity. Article XV, Section 12 prohibiting public service corporations from discrimination in charges, services or facilities does not differentiate on the basis of whether one holds a certificate of convenience and necessity. A.R.S. title 40 only requires a public service corporation to obtain a certificate of convenience and necessity prior to constructing a system or service, not as a prerequisite for application of regulations regarding service and charges to their customers.

■ This is not to say the existence of a certificate of convenience and necessity is wholly irrelevant. A certificate of convenience and necessity obligates the holder to serve an area and is a grant of monopoly rights by the state. *Trico Elec. Coop. v. Senner,* 92 Ariz. 373, 380–81, 377 P.2d 309, 315 (1962). Monopolizing or intending to monopolize a territory is one of the factors to be considered in determining whether one is a public service corporation. *Natural Gas Serv. Co. v. Serv–Yu Coop.,* 70 Ariz. 235, 238, 219 P.2d 324, 326 (1950).

■ This constitutional grant of power to the Commission on the issue of prescribing just and reasonable classifications and rates places limitations on the superior court's authority to alter a decision of the Commission. On these issues, the superior court may not reweigh the evidence and substitute its judgement for that of the Commission. *See Tucson Elec. Power Co.,* 132 Ariz. at 243, 645 P.2d at 234. The Commission's decision may be disturbed only if it is not reasonably

supported by the evidence, is arbitrary, or is otherwise unlawful. *Id.*

There is ample undisputed evidence in the record to support the conclusion that the Homeowners Association is a public service corporation and is serving both the Tonto Creek Estates and Tonto Rim Ranch subdivisions. It is within the Commission's jurisdiction to order the Homeowners Association to provide service to all customers on a nondiscriminatory basis. *See Town of Wickenburg v. Sabin*, 68 Ariz. 75, 200 P.2d 342 (1948).

 The Homeowners Association maintains that at no time did they ever hold out or promise to provide service to the residents of Tonto Rim Ranch subdivision. To the contrary, it contends it maintained a policy of being reluctant to provide service to these residences. The Homeowners Association's actions speak louder than its words. Even if the Homeowners Association's policy is not to provide service to Tonto Rim Ranch, the facts remain that it operates and maintains lines capable of providing water service to almost every lot in the Tonto Rim Ranch subdivision. The Homeowners Association has contracted to provide water service to many lots in the Tonto Rim Ranch subdivision and bills these customers for this service. The Homeowners Association's policy of being reluctant to provide water service to Tonto Rim Ranch is not a policy restricting its service area; to the contrary, it is nothing more than a policy of requiring new customers to agree to be discriminated against. Nothing the Homeowners Association asserts, if taken as true, would lead to a different result. Therefore, we affirm the superior court's grant of summary judgment in favor of the Commission with respect to the portions of the order requiring the Homeowners Association to provide service on a nondiscriminatory basis, charge rates only as approved by the Commission, apply for a main extension agreement and provide service to lot 30 in the Tonto Rim Ranch subdivision.

## 2. Parties Named in the Complaint

 The Homeowners Association contends that the Commission's order is unlaw-
ful because the Homeowners Association is not named in the complaint. We find this argument to be without merit. The complaint was issued in the name of "TONTO CREEK ESTATES WATER SYSTEM" and was served on the Homeowners Association. The Homeowners Association answered the complaint, admitting it was the current operator of the water system. In 1987, the Homeowners Association submitted to the Commission an annual report in which it listed itself as doing business as "TONTO CREEK ESTATES WATER SYSTEM." The complaint as written reasonably apprised the Homeowners Association of charges against it and was apparently understood by the Homeowners Association as such. The Homeowners Association's argument on this issue was presented to the Commission and was properly rejected.

## 3. The Original Holders' Due Process Rights

 The Homeowners Association contends that the Commission violated the due process rights of the original certificate holders, Messrs. Hickernell, Hamman and Foster, by ordering the Homeowners Association to provide nondiscriminatory service to Tonto Rim Ranch. The original holders do have vested property rights under the certificate protected by Article II, Section 17 of the Arizona Constitution. *Trico Elec. Coop.*, 92 Ariz. at 381, 377 P.2d at 315. This contention appears to have significant merit with respect to the issue of transfer and modification of the certificate, but not on the issue of the Homeowners Association's unlawful and discriminatory service conditions and charges. As explained above these charges may be viewed independently of whether the public service corporation is subject to a certificate of convenience and necessity.

 Even if we were to consider this as relevant to the lawfulness of the Commission's order on discrimination and rates, the Homeowners Association is without

standing to assert the due process rights of Hickernell, Hamman and Foster. In order for a party to assert the constitutional rights of a third person, that party must have a substantial relationship with the third person, the third person must be unable to assert the constitutional right on his or her own behalf, and the failure to grant the party standing must result in a dilution of the third person's constitutional rights. *Rasmussen by Mitchell v. Fleming*, 154 Ariz. 207, 220, 741 P.2d 674, 687 (1987); *State v. B Bar Enterprises, Inc.*, 133 Ariz. 99, 101 n. 2, 649 P.2d 978, 980 n. 2 (1982). Even if the relationship between the Homeowners Association and the original certificate holders, as unlawful transferee-transferor or perhaps operator-certificate holder, is considered substantial, it is not impossible for the original holders to assert their constitutional rights themselves. The Commission's action in transferring the certificate to the Homeowners Association may be collaterally attacked in superior court by the original holders for lack of jurisdiction. *Tucson Warehouse & Transfer Co.*, 77 Ariz. at 325, 271 P.2d at 478. Refusing to allow the Homeowners Association to assert the original holders' rights does not dilute the original holders' right to collaterally attack the Commission's order. Therefore, under these facts, the Homeowners Association will not be afforded the extraordinary standing required to assert the constitutional rights of another.

### C. *Attorneys' Fees*

 Both parties have requested attorneys' fees. The Commission's request cites no authority authorizing an award of attorneys' fees in its favor, nor have we found any. Therefore, we deny the Commission's request. The Homeowners Association cites A.R.S. section 12–348(A) as requiring attorneys' fees be awarded in its favor. Section 12–348(A) requires award of fees and other expenses to a party "which prevails by an adjudication on the merits" in any of several listed actions. The Homeowners Association did prevail on the merits for the very narrow issue of transfer of the certificate but lost on the more significant issue of providing nondiscriminatory service to Tonto Rim Ranch subdivision. Therefore, the Homeowners Association is not a prevailing party for the purpose of section 12–348(A) and we deny its request for attorneys' fees.

### III. CONCLUSION

Under the facts of this case the Corporation Commission was without jurisdiction to order the transfer or modification of the certificate of convenience and necessity issued in 1959 to Hamman, Hickernell and Foster. Therefore, the superior court's order granting summary judgment in favor of the Commission is reversed and remanded with instructions to enter judgment in favor of the Homeowners Association on the issue of transfer and modification of the certificate. The portions of the Commission's order directing the Homeowners Association to provide nondiscriminatory services and charge approved rates is within the Commission's jurisdiction. Viewing the facts in a light most favorable to the Homeowners Association, the superior court did not abuse its discretion by granting summary judgment in favor of the Commission on this issue. Therefore, the superior court's grant of summary judgment in favor of the Commission on these issues is affirmed.

WEISBERG and EHRLICH, JJ., concur.