256 P.3d 625

YUMA VALLEY LAND COMPANY, LLC; Territorial Real Estate, LLC; Saguaro Desert Land, Inc. and Parkway Place Development, LLC, Plaintiffs/Appellants,

v.

CITY OF YUMA, Defendant/Appellee.

No. 1 CA–CV 10–0121.

Court of Appeals of Arizona, Division 1, Department B.

May 5, 2011.

Jennings, Strouss & Salmon P.L.C. By Michael J. O'Connor and Douglas Gerlach, Phoenix, Attorneys for Plaintiffs/Appellants.

Snell & Wilmer L.L.P. By Kevin J. Parker, Robert J. Metli, Ronald W. Messerly and Martha E. Gibbs, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

BROWN, Judge.

¶ 1 Yuma Valley Land Company, Territorial Real Estate, Parkway Place Development, and Saguaro Desert Land (collectively "Developers") appeal the superior court's decision dismissing their declaratory judgment complaint against the City of Yuma. For the following reasons, we affirm.

## BACKGROUND

¶ 2 Yuma Valley Land Company and Territorial Real Estate own real property ("the Property") in an unincorporated area of Yuma County. Parkway Place Development and Saguaro Desert Land own options to buy the Property and intend to develop it for residential and/or commercial use.

¶ 3 In June 2009, Developers sued the City, seeking confirmation that the City was required to provide water and sewer services to the Property. Developers alleged that because the City had installed water and sewer lines immediately adjacent to the Property, it had the effect of precluding the Developers from providing water or sewer service to the Property other than by contracting with the City. Developers thus sought a declaratory judgment confirming that the City: (1) could not require payment of development fees as a condition to providing water and sewer services to the Property; and (2) must provide those services to the Property at the rates found in the City's Development Fee Schedule.

¶ 4 The City moved to dismiss, asserting that although Developers could enter a contract with the City for water and sewer services, no contract existed and therefore the City had no legal obligation to provide such services to the Property. Developers did not dispute that under ordinary circumstances the City had no obligation to provide service to nonresidents, but argued the City was required to provide the requested services when the City's actions made it impossible for Developers to obtain service elsewhere. The City countered that even if Developers could not obtain service elsewhere, it was still not legally obligated to provide service to the Property.

¶ 5 The superior court granted the City's motion to dismiss, pointing to the lack of any Arizona authority supporting the proposition "that the impossibility of a property owner to obtain water or sewage services from an alternative source gives rise to a duty on the part of a City or municipal entity to provide such water and sewage services." The court also noted that the complaint failed to sufficiently allege that it would be impossible for Developers to obtain water and sewer services from any other source. However, the court clarified that even if the complaint were amended to include that allegation, it would not change the court's opinion that the City had no duty to provide water or sewer service to the Property. Developers timely appealed.

## DISCUSSION

¶ 6 In reviewing the dismissal of a complaint for failure to state a claim, we accept as true the facts alleged in the complaint and will affirm the dismissal only if the plaintiff would not be entitled to relief under any interpretation of the facts susceptible of proof. *Fidelity Sec. Life Ins. Co. v. State,* 191 Ariz. 222, 224, ¶ 4, 954 P.2d 580, 582 (1998); Ariz. R. Civ. P. 12(b)(6). We review de novo questions of law decided by the superior court. *Aldabbagh v. Ariz. Dep't of Liquor Licenses & Control,* 162 Ariz. 415, 418, 783 P.2d 1207, 1210 (App.1989).

 ¶ 7 A municipality operating a public utility may provide service to nonresidents. *City of Phoenix v. Kasun,* 54 Ariz.

470, 474, 97 P.2d 210, 212 (1939). But no duty exists to provide service to nonresidents absent a statute, *id.* at 480, 97 P.2d at 214, or a contractual obligation, *Copper Country Mobile Home Park v. City of Globe,* 131 Ariz. 329, 333, 641 P.2d 243, 247 (App.1982). Once a municipality undertakes to provide service to nonresidents, it may not discontinue service as long as the municipality owns or controls the utility. Ariz.Rev.Stat. § 9-516(C) (2008).

 ¶ 8 Developers concede that a municipality is generally under no obligation to provide water and sewer service to nonresidents, but contend nonetheless that the general rule does not apply when the actions of the municipality have made it impossible for the nonresidents to receive those services in any other way. The limited authority relied upon by Developers, however, is not persuasive.

¶ 9 Developers rely in part on *Travaini v. Maricopa County,* 9 Ariz.App. 228, 450 P.2d 1021 (1969). In that case, an owner of property located within the boundaries of the City of Phoenix sought to connect to a city sewer line. *Id.* at 228, 450 P.2d at 1021. The city denied the owner's request on the grounds that the sewer line would be overburdened by the additional connection. *Id.* This court affirmed the superior court's issuance of a writ of mandamus compelling the city to permit the sewer connection. *Id.* at 229–30, 450 P.2d at 1022–23. We held that "[a]lthough there is no requirement that the City provide sewer services ... once a city undertakes to provide a service to the people in the city[,] it must provide that service adequately and on an impartial and non-discriminatory basis[.]" *Id.* at 229, 450 P.2d at 1022.

¶ 10 Developers also cite *Tonto Creek Estates Homeowners Ass'n v. Arizona Corp. Commission,* 177 Ariz. 49, 864 P.2d 1081 (App.1993), suggesting that the City is obligated to provide service because it is capable of doing so. In *Tonto Creek,* a homeowners' association assumed operation of a water utility that provided water service to lots within the Tonto Creek Estates subdivision. *Id.* at 54, 864 P.2d at 1086. Over time, the association began providing water service to several

properties located in a different subdivision, Tonto Rim Ranch. *Id.* Because the association, as a public service corporation, contracted to provide water to various lot owners located in Tonto Rim Ranch, this court concluded that the Arizona Corporation Commission could properly order the association to provide service to all the lot owners in that subdivision on a non-discriminatory basis. *Id.* at 58–59, 864 P.2d at 1090–91.

¶ 11 Here, it is undisputed that the City has constructed water and sewer lines adjacent to the Property. However, unlike the situation in *Travaini*, the Property is not within the City boundaries and the complaint does not allege the City currently provides service to the Property. Similarly, although the City may be capable of providing service to the Property, Developers have not asserted that the City has ever undertaken to provide water or sewer service to the Property or any areas adjacent to the Property outside the City limits. Thus, neither *Travaini* nor *Tonto Creek* limits the applicability in this case of the general rule that a municipality is not obligated to provide any utility service outside its boundaries absent a contractual or statutory obligation.

¶ 12 Developers also cite *Barbaccia v. County of Santa Clara*, 451 F.Supp. 260 (N.D.Cal.1978), in support of their contention that a city must provide utility service if the city's actions make it impossible to obtain service elsewhere. *Barbaccia* involved a takings claim against the City of San Jose and the County of Santa Clara. *Id.* at 262. The plaintiffs owned property in Santa Clara County that had become surrounded by the City of San Jose as the city expanded and annexed adjoining land. *Id.* Through agreements between the county and the city, the county retained some regulatory authority, but the property became subject to city planning and developmental control. *Id.* at 262–63. The plaintiffs alleged that through various actions, including denial of development plans because of a desire to keep the property as open space, the city denied them profitable use of the property. *Id.* at 263–64. After the plaintiffs filed the lawsuit, the county approved a plan for development, contingent upon the property's connection to the city's sewer system. *Id.* at 264. A local ordinance, however, precluded the city from providing sewer hook-ups to residential users outside the city limits. *Id.*

¶ 13 The district court found that the plaintiffs had stated a claim for an unconstitutional taking based on the "extraordinarily unique circumstances" of the case, including the city's decision to block future development by refusing to provide sewer service. *Id.* at 266. The court recognized that "[i]n the majority of cases a municipality will have no obligation to annex surrounding territory or provide non-city users access to its sewer system, but when a city envelops county land and then, while holding a monopoly on [sewage infrastructure], denies annexation or sewer hook-ups the city cannot hide behind the fiction that its power and responsibility stops at its borders." *Id.*

¶ 14 *Barbaccia* does not support Developers' position that the City is obligated to provide utility services to the Property. *Barbaccia* did not address the issue of whether the City of San Jose was obligated to provide the service; the only issue was whether the plaintiff had stated a claim for an unconstitutional taking of his property. *Id.* at 264 n. 2 (noting that neither side had directly addressed the "plaintiffs' right to compel the city of San Jose to provide access to its sewers" and recognizing the "traditional rule ... that a municipality may not be forced to extend its sewer lines to property lying outside its boundaries"). Moreover, Developers have not alleged that the City has attempted to impose any planning or developmental control on the Property, as was the case in the very unique circumstances present in *Barbaccia*. Even assuming such allegations, Developers have cited no authority suggesting that evidence supporting a takings claim would permit a court to compel a municipality to extend water and sewer services outside its boundaries.

## CONCLUSION

¶ 15 Based on the foregoing, we affirm the superior court's dismissal of Developers' complaint.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge, and JOHN C. GEMMILL, Judge.