IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

SEP 27 2011

COURT OF APPEALS
DIVISION TWO

TDB TUCSON GROUP, L.L.C., a Delaware )
limited liability company, )
)                    2 CA-CV 2011-0025
Plaintiff/Appellant, )    DEPARTMENT B
)
v.                        )    O P I N I O N
)
CITY OF TUCSON, a municipal corporation, )
)
Defendant/Appellee.  )
)

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20103909

Honorable Stephen C. Villarreal, Judge

AFFIRMED

Lewis and Roca LLP
  By John N. Iurino and Sivan R. Korn                                 Tucson
                                              Attorneys for Plaintiff/Appellant

Gabroy, Rollman & Bossé, P.C.
  By Richard M. Rollman and Richard A. Brown                         Tucson
                                              Attorneys for Defendant/Appellee

V Á S Q U E Z, Presiding Judge.

¶1             TDB Tucson Group, L.L.C. ("TDB") appeals from the trial court's grant of summary judgment in favor of the City of Tucson. On appeal, TDB contends the court erred in ruling that, as a matter of law, the City had no obligation to provide water service to TDB's real property (the "Property") located outside the City's corporate boundaries. For the reasons stated below, we affirm.

**Factual and Procedural Background**

¶2             "In reviewing a grant of summary judgment, we view the evidence and reasonable inferences 'in the light most favorable to the party opposing the motion.'" *Cannon v. Hirsch Law Office, P.C.*, 222 Ariz. 171, ¶ 7, 213 P.3d 320, 323 (App. 2009), *quoting Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, ¶ 13, 38 P.3d 12, 20 (2002). The Property is located in an unincorporated area of Pima County adjacent to the City of Tucson. TDB requested, and in February 2007 the City issued, a Water Availability letter to TDB, certifying the City was capable and willing to provide water service to the Property.[1] In August 2007, Pima County approved TDB's plan to develop the Property as a residential subdivision. Later that year, the City announced an interim water service policy that it would no longer extend water service outside its corporate boundaries unless it was legally obligated to serve a specific area. And, in October 2008, the City notified TDB it would not be extending service to the Property because of its interim policy.

---

[1]The Water Availability letter conditioned the assurance of water availability on TDB's submission of a water master plan requiring the City's approval. TDB does not dispute that the letter expired on February 7, 2008, nor does it contend that the City has a contractual obligation to provide water service.

2

¶3      In May 2010, TDB sued the City, seeking declaratory relief and alleging the City had violated its "legal obligation to provide adequate service impartially and without discrimination to all members of the general public to whom its scope of operation extends." TDB also filed an "Application for an Order to Show Cause why a writ of mandamus should not issue ordering . . . the City . . . to provide water services to the Property."

¶4      The parties stipulated that the application could be treated as a motion for summary judgment, and the City filed a cross-motion for summary judgment. Relying on A.R.S. § 45-492(A) of the Groundwater Management Act (the "GMA"), TDB asserted that "the residents and landowners in a municipality's service area are entitled to water service where such service has been established." And it argued, based upon its interpretation of the definition of "service area" in A.R.S. § 45-402(31)(a), "[t]here can be no dispute that the Property is in the City's service area." The City responded that the Property is not located within the City's service area as defined under the statute because the City has never provided water service to the Property and that the Property does not contain an operating distribution system owned by the City. The City argued that, although it may choose to serve lands outside its water service area, it had no legal duty to do so in this instance.

¶5      After hearing argument, the trial court granted the City's cross-motion and denied TDB's motion for summary judgment. The court based its ruling primarily on its interpretation of the definition of "service area" found in § 45-402(31)(a), which reads in pertinent part:

3

> "Service area" means . . . [w]ith respect to a city or town, the area of land actually being served water, for a non-irrigation use, by the city or town plus . . . [a]dditions to such area which contain an operating distribution system owned by the city or town primarily for the delivery of water for a non-irrigation use.

Because there was no dispute that the Property did not contain an operating distribution system, the court instead focused on the phrase "area of land actually being served water." It adopted the City's reasoning and concluded the City had no legal duty to provide water service to the Property. This appeal followed.

**Standard of Review**

¶6　　　"A trial court properly grants summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Airfreight Express Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, ¶ 19, 158 P.3d 232, 239 (App. 2007). We review a grant of summary judgment de novo. *Andrews v. Blake*, 205 Ariz. 236, ¶ 12, 69 P.3d 7, 11 (2003). We also review de novo issues of law involving statutory interpretation. *Bentley v. Building Our Future*, 217 Ariz. 265, ¶ 11, 172 P.3d 860, 865 (App. 2007).

**Discussion**

¶7　　　TDB maintains the City has a legal duty to provide water service to the Property because it is located within the City's service area. The trial court, relying on the definition of "service area" found in § 45-402(31), accurately framed the issue at the center of the parties' dispute as follows:

> Here, because the parties do not dispute that the City has never served [the Property] specifically, nor the fact that the

4

property contains no City-owned water infrastructure within its discrete boundaries, the focus is really on how to properly interpret "the area of land actually being served water" found in the statutory definition of "service area."[2]

¶8    On appeal, TDB essentially contends that the trial court too narrowly interpreted the statutory language and that under the court's interpretation, "*no* unserved property can ever be considered as included within a city's 'service area,' because it is unserved.  Put differently, the City would *never* have a duty to serve water to any property which is not already served."  TDB argues the phrase "area of land actually being served water" refers to the geographic area generally—rather than a piece of property specifically—and that because "the City provides water service to the properties surrounding and adjacent to the Property," it is therefore within an area of land actually being served.

¶9    "Our principal goal when interpreting a statute is to give effect to the legislature's intent." *Blevins v. Gov't Emp. Ins. Co.*, 226 Ariz. 450, ¶ 13, 250 P.3d 227, 230 (App. 2011).  "We look primarily to the language of the statute and give effect to the terms according to their commonly accepted meanings . . . unless the legislature provides

---

[2]TDB argues on appeal that the definition of "service area" in the GMA does not apply to this situation.  However, in its application for order to show cause filed in the trial court, TDB cited A.R.S. § 45-402(31)(a), reasoning that under its definition of "service area," "[t]here c[ould] be no dispute that the Property [wa]s within the City's service area."  We acknowledge that in one sentence of a footnote in its "[r]eply in support of its application for order to show cause," TDB also stated "[t]he [GMA] . . . does not address water utility services."  And later, during argument on the motions, TDB also asserted that the GMA does not apply to the question whether the City was obligated to provide water to the Property.  But, because TDB at various times both relied on the language of the act and rejected its applicability in the trial court, we do not consider this argument further.  TDB "may not invite error [in the trial court] and then assign it as error on appeal." *See Chavez v. Pima Cnty.*, 107 Ariz. 358, 363, 488 P.2d 978, 983 (1971).

5

a specific definition or the context of the statute indicates a specific meaning." *Mercy Healthcare Ariz., Inc. v. Ariz. Health Care Cost Containment Sys.*, 181 Ariz. 95, 98, 887 P.2d 625, 628 (App. 1994). "When the language of a statute is clear and unambiguous, a court should not look beyond the language, but rather 'simply apply it without using other means of construction, assuming that the legislature has said what it means.'" *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, ¶ 6, 181 P.3d 219, 225 (App. 2008), *quoting Hughes v. Jorgenson*, 203 Ariz. 71, ¶ 11, 50 P.3d 821, 823 (2002). And we will not interpret a statute in such a way as to produce "absurd results," *see Clear Channel*, 218 Ariz. 172, ¶ 26, 181 P.3d at 229, or "render[ any word, phrase, clause, or sentence] superfluous, void, insignificant, redundant or contradictory," *Patterson v. Maricopa Cnty. Sheriff's Office*, 177 Ariz. 153, 156, 865 P.2d 814, 817 (App. 1993).

¶10 Based upon its broad interpretation of the statutory language, TDB argues a municipality acting in its capacity as a water utility must provide service to "all who reasonably require service within its area of actual operation." To support its argument, TDB relies on *Veach v. City of Phx.*, 102 Ariz. 195, 427 P.2d 335 (1967), *Town of Wickenburg v. Sabin*, 68 Ariz. 75, 200 P.2d 342 (1948), and *Travaini v. Maricopa Cnty.*, 9 Ariz. App. 228, 450 P.2d 1021 (1969). We find that reliance misplaced.

¶11 In *Veach*, the owner of a store located in the City of Phoenix sued the city after the store was destroyed in a fire because the city had refused to provide water for fire protection despite the owner's earlier request that the city install a fire hydrant. 102 Ariz. at 196, 427 P.2d at 336. The trial court dismissed the complaint, finding the city was acting in its governmental capacity in furnishing water for the purpose of fighting

6

fires and it had no duty to supply the owner with water for fire protection. *Id.* In reversing that decision, our supreme court first made clear that "a municipality has no absolute duty to provide water for fire protection purposes to its inhabitants." It held, "[h]owever, [that] when a city assumes the responsibility of furnishing fire protection, . . . it has the duty of giving each person or property owner such reasonable protection as others within a similar area within the municipality are accorded under like circumstances." *Id.* at 197, 427 P.2d at 337.

¶12        In *Sabin*, the Town of Wickenburg operated water and electric utilities within the town limits. 68 Ariz. at 76, 200 P.2d at 342. After the town annexed the subdivision in which Sabin lived, he paid the customary fee to establish water and electric service but was told his application would be denied unless he also paid a substantial deposit. *Id*. at 76, 200 P.2d at 343. Sabin refused to pay the deposit and his application was denied. *Id.* The owner of the lot next to Sabin's was required to pay only the customary establishment fee. *Id*. at 77, 200 P.2d at 343. The superior court issued a writ of mandamus compelling the town to provide water and electric service, and our supreme court affirmed, concluding there was ample evidence Sabin's property was located in an established "service zone" and the town's exaction of a deposit not required of others amounted to "arbitrary and unjust discrimination." *Id*. at 80, 200 P.2d at 345. However, the court suggested that, if providing utility services to Sabin "involved an extension of services into an entirely new territory," then "rejecting service to [him] might well be justified." *Id*. Although the court stated it was not "passing upon this point," it nevertheless noted "there is very respectable authority to the effect that a

7

municipality . . . may exercise a governmental discretion as to the limits to which it is advisable to extend its water mains and power lines, and an extension will not be compelled by the courts at the instance of an inhabitant." *Id*. at 79, 200 P.2d at 349.

¶13　　　　And in *Travaini*, the City of Phoenix refused to issue a permit to Maricopa County to connect county hospital facilities being constructed within city boundaries to an existing city sewer line. 9 Ariz. App. at 228, 450 P.2d at 1021. The trial court issued a writ of mandamus compelling the city to permit the connection and the city appealed. *Id.* This court affirmed, holding that "once a city undertakes to provide a service to the people in the city it must provide that service adequately and on an impartial and non-discriminatory basis." *Id.* at 229, 450 P.2d at 1022.

¶14　　　　The issue in each of those cases was the scope of a municipality's obligation to provide utility service within the city or town boundaries. They stand for the proposition that, although it is not required to do so, once a municipality decides to provide a utility service to its residents, it must do so for all without discrimination. The cases did not address, much less decide, the scope of a municipality's duty to provide water utility service outside municipal boundaries. Although TDB asserts this fact is neither "dispositive" nor "relevant" to the outcomes in those cases, we disagree.

¶15　　　　TDB also relies on *City of Milwaukee v. Pub. Serv. Comm'n*, 66 N.W.2d 716 (Wis. 1954), to support its contention that the city has a legal obligation to provide water service "within the scope of its operation, but outside its corporate limits." There, the city appealed an order of the Public Service Commission of Wisconsin requiring it, as a public water utility, to furnish water to the plaintiff's property, part of which was

8

located outside Milwaukee's city limits in the City of Glendale. 66 N.W.2d at 717. The Wisconsin Supreme Court affirmed the order, framing the issue as "whether [the city] ha[d] extended its service and is holding itself out to serve in the general area within the City of Glendale in which the [plaintiff's] building is located." *Id.* at 718. The court stated "[e]very public utility has the obligation, within the scope of its undertaking, to furnish its service to all who reasonably require it," and "[i]n the case of a municipal utility that jurisdiction is not limited to the boundaries of the municipality but extends to all areas where the utility has undertaken to serve." *Id.* at 718.

¶16        TDB's reliance on *City of Milwaukee* is unavailing for a number of reasons. First, as the city points out, a portion of the plaintiff's property was located in the City of Milwaukee's corporate limits and already was being furnished water. Second, to the extent the court held the city had a legal obligation to provide service because it served the "general area," we reject that proposition. Third, there is nothing in that case to suggest Wisconsin has the same water conservation policies inherent in Arizona's GMA that affect a water utility's ability to provide service.[3]

---

[3]To the extent TDB suggests the present case can be decided on common law principles, we disagree. "Arizona's common law evolved from the territorial-day view that a landowner has a property interest in groundwater underlying the surface estate." *Davis v. Agua Sierra Resources, L.L.C.*, 220 Ariz. 108, ¶ 11, 203 P.3d 506, 508 (2009). In 1980, the legislature enacted "the GMA [to] create[] a system of groundwater rights and conservation requirements," "[w]ith the goal of reducing the state's overdraft of groundwater." *Id.* at ¶ 12, 220 P. 3d at 509. The GMA established Active Management Areas ("AMA") in "geographical areas [of the state] where groundwater supplies are imperiled." *Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, n.1, 638 P.2d 1324, 1325 n.1 (1981). "In such areas, a person may withdraw and use groundwater only in accordance with the GMA's detailed regulations." *Davis*, 220 Ariz. at ¶ 13, 203 P.3d at 509; *citing* A.R.S. § 45-451(A)(1). Each AMA was required to adopt a conservation

9

¶17        In Arizona, a municipality has the right to provide water service "through its municipal water plant to customers without, as well as within, its corporate limits." *City of Phx. v. Kasun*, 54 Ariz. 470, 474, 97 P.2d 210, 212 (1939). Once established, a municipality may not discontinue water service to nonresidents as long as it owns or controls the utility. A.R.S. § 9-516(C). But absent either a statutory or contractual obligation, a municipality has no duty to provide service to nonresidents. *Kasun*, 54 Ariz. 470, 478-79, 97 P.2d at 214; *see also Yuma Valley Land Co. v. City of Yuma*, 227 Ariz. 228, ¶ 7, 256 P.3d 625, 626 (2011).

¶18        Here, the trial court properly relied on *Cortaro Water Users' Ass'n v. Steiner*, 148 Ariz. 343, 714 P.2d 836 (App. 1985), in support of its decision. In *Cortaro*, the City of Tucson filed applications with the Arizona Department of Water Resources ("ADWR") to drill three new water wells on property it had acquired by quitclaim deed. *Id*. at 346, 714 P.2d at 838. The well-site property was located outside the city boundaries in a subdivision known as Peppertree Ranch, a portion of which was within the water service area of an irrigation district. *Id*. Over the irrigation district's objection, ADWR granted the city's well permit application. *Id*. The irrigation district then challenged in the superior court the issuance of the drill permits and sought an injunction

management plan. A.R.S § 45-563(A). For the Tucson AMA, the "'management goal' was to establish 'safe-yield,' a balance between the amount of groundwater withdrawn and the amount naturally and artificially recharged . . . by no later than 2025." *Ariz. Water Co. v. Ariz. Dep't of Water Resources*, 208 Ariz. 147, ¶ 4, 91 P.3d 990, 992 (2004). If a municipality is unable to establish a safe yield, it must stop approving new development. *See Home Builders Ass'n of Cent. Ariz. v. City of Scottsdale*, 187 Ariz. 479, 482, 930 P.2d 993, 996 (1997). And, in the interim, a new subdivision cannot be approved for development unless it is supported by a certificate of an assured water supply. A.R.S. § 45-576(A).

prohibiting the city from pumping from an existing well on the property. *Id*. at 347, 714 P.3d at 840. The district alleged the city lacked authority to drill or pump water because Peppertree Ranch was outside the city's service area. *Id*. The superior court agreed, remanding the case to ADWR with instructions to revoke the well permits. *Id*.

¶19 On appeal, this court affirmed the trial court's ruling that the well-site property was not in the city's service area. *Id.* at 349, 714 P.2d at 842. Applying the definition in § 45-402(31),[4] we stated that for the property to be in the service area, "Tucson must either have been actually serving water to Peppertree Ranch at the time it applied for the well permits or [it] must have contained an operating distribution system owned by Tucson. At the time it applied, Tucson had not fulfilled either requirement." *Id.* Just as in *Cortaro*, here the relevant question is whether the Property is in an area receiving service. Under the plain language of the statute it is not.

¶20 TDB overstates the breadth of the phrase "area of land actually being served water" in § 45-402(31)(a). Notably, the Property is not a single parcel located within a larger area but is comprised of a multi-acre, multi-parcel residential subdivision. Were we confronted with the City's refusal to provide service to parts of the Property while providing service to others, we might reach a different result. *See Tonto Creek Estates Homeowners Ass'n*, 177 Ariz. 49, 864 P.2d 1081 (App. 1993) (water utility providing service to some lot owners in subdivision required to provide service to all lot owners on nondiscriminatory basis). But we reject TDB's argument that, because the

---

[4]Since *Cortaro* was decided, this subsection has been renumbered, but for purposes of this decision, the language is the same. *See id.* at n.3, 714 P.2d at 838 n.3.

11

City provides service to certain areas outside City boundaries, it is obligated to provide service to other properties in other areas.

¶21 Our conclusion is supported by this court's recent decision in *Yuma Valley Land Co.*; there, the plaintiffs owned real property in an unincorporated area of Yuma County. 227 Ariz. 228, ¶ 2, 256 P.3d at 625. The plaintiffs sued the City of Yuma, seeking a declaratory judgment that the city was required to provide water and sewer services to the plaintiffs' property because the city had installed water and sewer lines immediately adjacent to the property. *Id.* ¶ 3, 256 P.3d at 625. The city moved to dismiss, and the trial court granted the motion. *Id.* ¶ 5, 256 P.3d at 626. This court affirmed, concluding that because the property was outside the city boundaries, the mere fact there were adjacent water and sewer lines created no obligation to provide service. *Id.* ¶¶ 11, 15, 256 P.3d at 627. We stated that nothing in the cases cited "limits the applicability in this case of the general rule that a municipality is not obligated to provide any utility service outside its boundaries absent a contractual or statutory obligation." *Id.* The same reasoning applies here. The trial court did not err in granting summary judgment to the City.

**Disposition**

¶22 For the reasons stated above, we affirm the trial court's summary judgment in favor of the City.

/s/ *Garye L. Vásquez*
_____
GARYE L. VÁSQUEZ, Presiding Judge

12

CONCURRING:

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge


/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge